# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSE JUAN ISLAS-BRAVO,<br><br>Defendant. | No. CR07-3039-MWB<br><br>**REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS** |

_____

The defendant Jose Juan Islas-Bravo ("Islas") is charged, together with codefendant Leodan Vasquez ("Vasquez"), with conspiracy to distribute and to possess with the intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) & (b)(a)(A); and possession with intent to distribute, and aiding and abetting the possession with intent to distribute, 50 grams or more of methamphetamine, 5 grams or more of which was pure methamphetamine, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B). In addition, Islas is charged separately with unlawful entry into the United States, in violation of 8 U.S.C. § 1325(a). *See* Doc. No. 18, Superseding Indictment. On November 2, 2007, Islas filed a motion (Doc. No. 21) to suppress evidence arising from his arrest, detention and interrogation on August 8, 2007, and from the search of an automobile in which he was a passenger on that date. Islas claims officers lacked probable cause to stop the vehicle in which he was a passenger, and his arrest was warrantless and without probable cause. *See id.* The plaintiff (the "Government") resists the motion. Doc. No. 29.

As directed in the trial management order, the court held an evidentiary hearing on the motion on November 30, 2007, at which Assistant U.S. Attorney Kevin Fletcher appeared on behalf of the Government, and Islas appeared in person with his attorney, Stuart J. Dornan. Webster County Sheriff's Deputies Michael Halligan and Tony Walter

testified at the hearing.  The court admitted the following exhibits into evidence: **Gov't Exs. 1A, 1B1, 1B2, 1C, & 1D** – videotapes from vehicles driven by several different law enforcement officers who were involved in the pursuit and arrest of Islas and Vasquez on August 8, 2007; **Gov't Exs. 2A through 2D** – active warrants for Vasquez's arrest that were known to officers on August 8, 2007, prior to the pursuit and stop of the vehicle; and **Gov't Exs. 3A through 3C** – active warrants for Islas's arrest as of August 8, 2007 (unknown to officers at the time of the pursuit and Islas's arrest).[1]

The motion is now fully submitted, and the court turns to consideration of Islas's motion to suppress.

### *Background Facts*

Prior to August 8, 2007, Webster County Sheriff's Deputy Michael Halligan had been investigating Vasquez for suspected distribution of methamphetamine.  He had information that Vasquez had been living at 100 Avenue E in Fort Dodge, Iowa, which is in Webster County.  He was aware of several outstanding warrants for Vasquez's arrest, *see* Gov't Exs. 2A, 2B, 2C & 2D, and he and other officers had been attempting to locate Vasquez to arrest him.  Vasquez was on Webster County's "Top 10 Most Wanted" list, leading to several tips from citizens through a "Crime Stoppers" hot line.

On August 8, 2007, officers got a Crime Stoppers tip indicating Vasquez had been seen at a residence on South 22nd Street in Fort Dodge, Iowa, and he was driving a black Ford F-150 truck.  Officers went to the residence and spoke with a woman who stated Vasquez was not there currently, but she did identify the Ford truck.  Later in the day, Deputy Halligan saw a black Ford F-150 truck parked behind 100 Avenue E.  He set up surveillance and observed two Hispanic males in the truck, driving away from 100

---

[1] One additional exhibit was admitted into evidence that is not relevant here.  The exhibit was in support of Islas's motion for severance.

2

Avenue E. He suspected Vasquez was one of the individuals in the truck so he began following the truck. At some point, he determined the truck was registered to Vasquez's sister, Rocio Vasquez.

The Ford truck pulled up to a stop sign. There was a white Dodge Neon immediately behind the truck, and Deputy Halligan's vehicle was behind the Dodge. From his vantage point, Deputy Halligan could see clearly into the back of the truck. He observed the two Hispanic males in the truck, and he thought the driver was Vasquez, although he was not positive about the identification. After the truck had been traveling on the city streets for a few blocks, Deputy Halligan clearly saw the truck's occupants pull their seatbelts down over their shoulders and put them on. These events occurred at around 6:00 p.m. to 6:30 p.m., and it was still daylight.

Deputy Halligan called for a marked patrol car to conduct a traffic stop of the truck for the seatbelt violation. He continued to follow the truck until a marked patrol car caught up with them, pulled in behind the truck, and activated its emergency lights. In response, the Ford truck sped off and led officers on a high-speed chase through residential areas of Fort Dodge. Several marked patrol cars were involved in the chase, one of which was driven by Deputy Tony Walter. At some point during the chase, Deputy Walter's vehicle became the lead vehicle in pursuit of the truck. Deputy Walter observed the truck's passenger "digging" in the truck's center console. A few seconds later, he observed items being thrown from the passenger's window of the truck. He could not tell whether the items were being thrown by the driver or the passenger, only that they were coming from the passenger's window.

Officers finally stopped the truck when it collided with another vehicle. Deputy Walter took the driver, identified as Vasquez, into custody, while another officer took the passenger, identified as Islas, into custody. Deputy Walter observed a white crystalline

3

substance that he believed to be methamphetamine on the passenger's seat. He scraped up some of the substance and put it in an evidence bag for testing.

To the officers' knowledge, no illegal substances were found on Islas's person at the time of his arrest, and Islas did not make any incriminating statements prior to being advised of his rights.

## *Discussion*

Islas argues the officers lacked probable cause to stop the truck in the first place. He argues Deputy Halligan, in his written report of the incident, did not state clearly that the occupants were not wearing their seatbelts because the deputy stated it "appeared" the truck's occupants were not wearing their seatbelts. *See* Doc. No. 21-2 at 2-3. Islas further argues the officers lacked probable cause to arrest him without a warrant because he "was an innocent passenger who did not participate in the criminal activity of his driver." *Id*. at 3. He claims the officers had no knowledge of facts and circumstances to suggest he had committed, or was committing, a crime at the time of his arrest. *Id*. at 3-4.

The court credits Deputy Halligan's testimony that he observed the truck's occupants donning their seatbelts after they had been driving for several blocks. The seatbelt violation provided probable cause for the officers to stop the truck. *See United States v. Lyton*, 161 F.3d 1168, 1170 (8th Cir. 1998) ("Any traffic violation, even a minor one, gives an officer probable cause to stop the violator.").

However, even without the seatbelt violation, the court finds the officers had a reasonable, articulable suspicion that Vasquez, a fugitive, was in the truck, allowing them to perform an investigatory stop of the vehicle. *See Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *United States v. Wheat*, 278 F.3d 722, 726 (8th Cir. 2001); *United States v. Gonzalez*, 220 F.3d 922 (8th Cir. 2000). The officers knew of outstanding warrants for Vasquez's arrest. They had information that Vasquez was driving

4

a Ford truck registered to his sister. They saw the Ford truck leave from a location believed to be Vasquez's residence. And they observed two Hispanic males in the truck, one of whom was believed to be Vasquez. The officers did not have to identify Vasquez positively in order to make a *Terry*-type stop of the vehicle. The standard is reasonableness, and "the 'level of suspicion required by a *Terry* stop is obviously less demanding than that for probable cause[.]'" *United States v. Gonzales*, 220 F.3d 922, 925 (8th Cir. 2000) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989)).

Once the vehicle fled from the officers, the officers then had probable cause to stop the vehicle because the driver was actually committing a traffic violation. "[I]t is well-established that a police officer who observes a traffic violation has probable cause to stop the vehicle and its driver." *United States v. Olivera-Mendez*, 484 F.3d 505, 509 (8th Cir. 2007) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S. Ct. 330, 332, 54 L. Ed. 2dc 331 (1977) (*per curiam*)).

Once the vehicle was stopped, Vasquez was arrested both for the current traffic violations and on the outstanding warrants. The officers were entitled to search the vehicle incident to Vasquez's arrest. *See United States v. Ball*, 499 F.3d 890, 896 (8th Cir. 2007) (citing, *inter alia*, *New York v. Belton*, 453 U.S. 454, 460, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981)). During their search of the vehicle, the officers located a substance they believed to be methamphetamine. Neither Vasquez nor Islas made any statements at the scene regarding ownership of the drugs. Furthermore, officers had seen items being thrown from the passenger's window of the vehicle. These facts established probable cause to arrest Islas. *See United States v. Velazquez-Rivera*, 366 F.3d 661, 665 (8th Cir. 2004) (citing *Maryland v. Pringle*, 540 U.S. 366, 372-73, 124 S. Ct. 795, 801, 157 L. Ed. 2d 769 (2003)).

5

Islas has failed to show the stop of the vehicle, the warrantless search of the vehicle, and his arrest were unlawful. The undersigned recommends Islas's motion to suppress be **denied**.

Any party who objects to this report and recommendation must serve and file specific, written objections by **December 7, 2007**. Any response to the objections must be served and filed by **December 13, 2007.**

IMPORTANT NOTE: Any party planning to lodge any objection to this report and recommendation must order a transcript of the hearing promptly, not later than **December 5, 2007**, <u>**regardless of whether the party believes a transcript is necessary to argue the objection**</u>. If an attorney files an objection to this report and recommendation without having ordered the transcript as required by this order, the court may impose sanctions on the attorney.

**IT IS SO ORDERED.**

**DATED** this 3rd day of December, 2007.

*[signature]*

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT